ARMOUR & CO. *v.* REAMS, ADMR., ET AL.

(Decided February 18, 1929.)

*Messrs. Kirkbride, McCabe & Boesel,* for plaintiff in error.

*Mr. C. A. Thatcher,* for defendant in error administrator.

*Mr. W. A. Eversman* and *Mr. H. A. Middleton,* for defendant in error Railroad Company.

RICHARDS, J. Frasier Reams, as administrator of the estate of Dwayne H. Greenwood, commenced the original action in the court of common pleas against Armour & Co. and the New York, Chicago & St. Louis Railroad Company to recover damages

for the death of his decedent, claimed to have been caused by their negligence. The trial resulted in a directed verdict in favor of the railroad company and a judgment thereon, and a verdict and judgment against Armour & Co. in the amount of $15,000. This proceeding is brought to secure a reversal of these judgments.

The cause of action being based on the claimed negligence of both defendants, they were liable, if liable at all, jointly and severally, and the plaintiff could have sued either one of them separately. That being the case, Armour & Co. cannot complain that a verdict was directed in favor of the railroad company. The only one who could claim to be prejudiced thereby was the administrator, and he has not filed any cross-petition in error. It follows, therefore, that the petition in error must be dismissed as to the New York, Chicago & St. Louis Railroad Company. *Counter* v. *Tiedman,* 29 Ohio App., 489, 163 N. E., 915, decided by this court January 30, 1928.

The decedent, Dwayne H. Greenwood, was in the employ of the railroad company as conductor, and lost his life early in the morning, before daylight, on December 12, 1927. He was 5 feet 11½ inches in height, weighed 204 pounds, was 42 years of age, in receipt of a salary varying from $215 to $225 per month, and left a widow 41 years of age. Armour & Co. owned and operated a storage warehouse in the city of Toledo, and maintained along the westerly side thereof certain concrete docks, and along the westerly side of these docks was a certain railroad track over which it was accustomed to receive refrigerator cars of meat and other animal products

on delivery by the railroad. One of these docks was a small concrete structure close to the railroad track, and on top of this concrete dock, when a car was being unloaded, Armour & Co. was accustomed to have a movable wooden platform. On the date named the decedent was crushed to death between a car of the railroad company and the west end of this concrete dock, the movable wooden platform also being between him and the dock at the time of his death. The concrete dock was 37 inches high, the top 6 feet long, and extended from the building a distance of about 4 feet to within 8 or 10 inches from cars on the railroad track. The movable wooden platform was 34 inches wide by about 4 feet 2 inches in length, and substantially 8 inches in height. This platform was used for the purpose of increasing the height of the dock, the better to enable men, when unloading cars, to hang quarters of beef and carcasses of other animals on trolleys running on an overhead rail from the dock into the building.

The petition contained numerous grounds of negligence, but the case was submitted to the jury on three grounds only:

First. That Armour & Co. permitted the movable wooden platform to become covered with grease and blood, and thus slippery, so that it slid off with the decedent against a moving car.

Second. That Armour & Co. maintained the platform too near to the railroad track.

Third. That Armour & Co. failed to light the dock and the surrounding premises.

The railroad track approached the south end of Armour & Co.'s premises from the southwest, mak-

ing a curve to the north, so that when it reached said premises it extended in a straight line northerly to the north end of the premises, which was the end of the side track, where a bumper was maintained. In hauling cars in to be unloaded, the train crew invariably operated on the easterly side of the cars, and, on account of the curve, it was necessary to have signals relayed to the engineer from a trainman in front of the cars being pushed in.

On the morning in question Greenwood was walking with a lantern in his right hand northerly along the east side of the railroad track, and so proceeded until he came to the small concrete dock already mentioned. Neither the dock nor the surroundings were lighted. At the same time four cars were being pushed north, into and along this siding by an engine fronting in the same direction in which the cars were being pushed. The cars were proceeding slowly, perhaps not over two miles an hour. When Greenwood reached this concrete dock it was necessary for him to climb over the same, and that had been the method practiced by the railroad men, to the knowledge of Armour & Co., for a long period of time.

The only serious controversy in this case is one of fact as to the precise method in which Greenwood met his death. He was seen to approach this small dock, holding his lantern in his right hand, as if to give a "steady" signal to be relayed to the engineer, and, according to the testimony, his form started to "raise" as he reached the dock, and he was apparently getting on to the same. He had raised his left foot and had placed it either on the concrete dock or on the platform, when his lantern went up

higher than his head and went out. The cars were stopped almost instantly and he was found wedged between the car and car stirrup at the front end of the car, on the one side, and the west side of the cement dock, on the other, with the wooden platform between him and the dock, and with his head to the south and his feet to the north. The middle timber of the platform was torn loose therefrom at one end, apparently struck by the car and forced from the platform in the direction the car was moving. The evidence is entirely clear that Greenwood was proceeding to climb over the dock, as trainmen had been accustomed to do, but it is not clear as to how far he had succeeded in getting at the time of the accident.

Counsel for Armour & Co. contend that his foot slipped from the cement dock when attempting to get thereon, while counsel for the administrator contend that he had proceeded far enough so that the movable wooden platform slipped off the concrete dock with him, carrying him between the car to the west and the platform to the east, with the concrete dock just to the east of the platform. The evidence discloses that the decedent had been employed for a considerable period of time as conductor, and was familiar with the methods of moving cars onto this siding. It also shows that this movable wooden platform had been used for a long period of time, and was not kept in any particular place, but might be found almost anywhere, either on the small dock, or on the slanting runway extending from the same to the north, or on a larger dock just to the north, or might be in place, or leaning up against the building of Armour & Co. Its precise location at the time of the accident is not disclosed except as may be inferred from where it was found in a damaged con-

dition at the time of Greenwood's death. Evidently it had not extended into a dangerous position beyond the concrete dock, because one car had just passed slowly to the north of the dock without coming in contact with the platform. The evidence shows that this wooden platform was usually not placed on the dock in position until the car had been spotted, and the door opened, for the ordinary refrigerator car door could not be opened while the platform was in place. The evidence discloses that this movable wooden platform had been used for a long period of time, and had become covered with grease and blood resulting from carrying or transporting quarters of beef and other animal products over it as they were unloaded from the cars, and that it had naturally become more greasy and slippery with long-continued use, and grease and blood had extended to the lower part of it, where the timbers were, rendering them slippery.

From the fact that decedent's body was found at the west end of the concrete dock, and was extending north and south, and was wedged in between the car and stirrup at the west and the platform and concrete dock at the east, the jury may well have inferred that Greenwood, in attempting to climb over the dock, had proceeded far enough so that on account of the greasy condition of the lower part of the platform he was precipitated west with the platform, and fell with it between the car and the dock, and thus met his death.

We regard the physical evidence as of importance in determining how he met his death, and regard the manner just stated as the most probable way in which the accident occurred. The manner of his death and the questions of negligence and contrib-

utory negligence were left to the jury under proper instructions, and under those instructions the jury having found that the negligence of Armour & Co. proximately caused the accident, and having found the decedent not guilty of contributory negligence, we feel that such verdict is sustained by sufficient evidence. It must be remembered that the decedent is not here to give his own statement or explanation of the manner of the accident.

We are well aware of the rule that verdicts and judgments must not be based on mere conjecture or guess, but they may be determined by probabilities in civil cases. As already stated, this court holds to the view that the greater probabilities, as disclosed by the direct and circumstantial evidence, and the physical facts shown in the case, indicate that Greenwood met his death in the manner claimed by the plaintiff below. The controlling facts in this case are not in controversy, but the facts that we have are such that from a consideration of same reasonable minds might reach different conclusions with relation to the manner in which the death was caused.

We have examined all of the claimed errors and find none to the prejudice of the plaintiff in error. The petition in error will be dismissed as to the New York, Chicago & St. Louis Railroad Company, and the judgment as to Armour & Co. will be affirmed.

*Petition in error dismissed as to Railroad Company, and judgment affirmed as to Armour & Co.*

WILLIAMS, J., concurs.

LLOYD, J., dissents as to judgment of affirmance against plaintiff in error.